721 F.2d 1252
 Robert KENNERLY, as personal representative of the estate of
Leo Kennerly, Sr., the original plaintiff,
Plaintiff-Appellant,
v.
The UNITED STATES of America; James Watt, individually and
as Secretary of Department of Interior; Anson Baker,
individually and as former Superintendent of Blackfeet
Agency; Jack Shoemake, individually and as former
Superintendent of Blackfeet Agency; Michael Fairbanks,
individually and as Superintendent of Blackfeet Agency;
Merle Magee, Sr., individually and as a member of Blackfeet
credit committee; Archie St. Goddard, individually and as a
member of Blackfeet credit committee; Eloise Englund,
individually and as member of Blackfeet credit committee;
Lucille McKay, individually, as an agent of the Bureau of
Indian Affairs and as an agent of the Blackfeet Tribe; and
The Blackfeet Indian Tribe, Defendants-Appellees.
 No. 82-3196.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 5, 1983.
Decided Dec. 15, 1983.
 
 Steven L. Bunch, Montana Legal Services Asso., Helena, Mont., for plaintiff-appellant.
 Kurt V. Blue Dog, Boulder, Colo., for defendants-appellees.
 Appeal from the United States District Court for the District of Montana.
 Before WALLACE and SCHROEDER, Circuit Judges, and COYLE,* District Judge.
 SCHROEDER, Circuit Judge:
 
 
 1
 Leo Kennerly, Sr., a member of the Blackfeet Indian Tribe, brought this action in the district court against the United States, officers of the Department of Interior and Bureau of Indian Affairs, the Blackfeet Tribe, and members of the Tribal Credit Committee. The suit challenged, on due process and breach of trust grounds, the government's withdrawal of funds from Kennerly's tribal land income fund to repay debts owed to the Tribe; the Bureau of Indian Affairs administered the fund and made the withdrawals at the Tribe's request. Kennerly sought to recover damages and also sought prospective injunctive relief on behalf of himself and similarly situated tribal members.
 
 
 2
 The district court granted summary judgment for the federal government and the individual Interior officials (federal defendants). It held that the Interior Board of Indian Appeals had not acted arbitrarily or capriciously when it held that the payments were valid so long as the fund assignments which secured the underlying debts had been formally approved by the Secretary of the Interior as required by applicable regulations. The court dismissed the action against the Blackfeet Tribe (Tribe) and the individual tribal defendants on grounds of immunity. We affirm the dismissal against both the Tribe and the tribal defendants. We reverse the judgment in favor of the federal defendants because the payments of Kennerly's trust funds to the Tribe without any hearing on the amount or validity of the underlying debts or assignments violated his due process rights, and, given the unique role of the federal government as trustee, that violation indicates a breach of fiduciary responsibilities.
 
 
 3
 * FACTS
 
 
 4
 The background of this appeal and the basis for the suit are fully set forth in the district court's opinion which is reported at 534 F.Supp. 269 (D.Mont.1982). We summarize only the essential facts.
 
 
 5
 Leo Kennerly owned interests in several parcels of land which the Bureau of Indian Affairs (BIA) leased on his behalf. The income from these leases was held for Kennerly in an Individual Indian Money Account (IIM account) administered by the BIA. Between 1943 and 1957 Kennerly received several loans from the Blackfeet Tribe, some of which were secured by written, notarized assignments of income from his IIM account. Government approval of the assignments was required. 25 U.S.C. Sec. 410 (1976).
 
 
 6
 Although the loans apparently were not repaid, the Tribe took no action to enforce any rights under the assignment provisions until 1977, when the Tribal Credit Committee sent Kennerly a letter stating the amount still owed on the loans and informing him that the Tribe "will use this Assignment and levy against your annual lease income immediately." The letter further stated: "If you do not want your lease income held, please make other satisfactory arrangements."
 
 
 7
 The Credit Committee then requested the BIA to attach funds in the IIM account pursuant to the provisions of 25 C.F.R. Sec. 104.9 (current version at 25 C.F.R. Sec. 115.9 (1982)), which provides:
 
 
 8
 Restrictions.
 
 
 9
 Funds of individuals may be applied by the Secretary or his authorized representative against delinquent claims of indebtedness to the United States or any of its agencies or to the tribe of which the individual is a member, unless such payments are prohibited by acts of Congress, and against money judgments rendered by courts of Indian offenses or under any tribal law and order code. Funds derived from the sale of capital assets which by agreement approved prior to such sale by the Secretary or his authorized representative are to be expended for specific purposes, and funds obligated under contractual arrangements approved in advance by the Secretary or his authorized representative or subject to deductions specifically authorized or directed by acts of Congress, shall be disbursed only in accordance with the agreements (including any subsequently approved modifications thereof) or acts of Congress. The funds of an adult whom the Secretary or his authorized representative finds to be in need of assistance in managing his affairs, even though such adult is not non compos mentis or under other legal disability, may be disbursed to the adult, within his best interest, under approved plans. Such finding and the basis for such finding shall be recorded and filed with the records of the account.
 
 
 10
 This regulation is based on 25 U.S.C. Sec. 410, which states:
 
 
 11
 No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a minor, during his minority, except with the approval and consent of the Secretary of the Interior.
 
 
 12
 Pursuant to that request, the BIA began transferring Kennerly's lease income to the Tribe. Kennerly protested these payments and engaged in some informal negotiations with the Tribe and the BIA Blackfeet Indian Agency Superintendent. The withdrawals were temporarily stopped, but were resumed when the BIA Area Director, after consultation with the Interior Department field solicitor, concluded that the payments were properly authorized pursuant to the regulation.
 
 
 13
 Kennerly then protested the Area Director's decision in accordance with the provisions of 25 C.F.R. Secs. 2.1-2.20, which set forth procedures for appeals from BIA administrative actions. These administrative appeals led to a decision by the Interior Board of Indian Affairs (IBIA). See 43 C.F.R. Secs. 4.290-4.297, 4.350-4.369 (procedures applicable to IBIA administrative appeals) (current amended version at 43 C.F.R. Secs. 4.310-4.317, 4.320-4.340 (1982)). In response to Kennerly's contentions that the BIA procedures had violated due process, the IBIA held that the payments were appropriate so long as the assignments had been approved as required by 25 C.F.R. Sec. 104.9. See Kennerly v. Billings Area Director, BIA, 8 IBIA 106 (1980). As a result of this decision, further payments were made to the Tribe until the total amount transferred from Kennerly's IIM account equaled the amount of his assignments: $3,705.50. It is undisputed that there has never been any judgment against Kennerly on the underlying debt secured by the assignments, nor any formal hearing or even ex parte administrative proceeding to determine the amount owed to the Tribe.
 
 
 14
 Kennerly next filed this action in district court. Leo Kennerly, Sr. died during the pendency of the district court proceedings, and his son, Robert Kennerly, the personal representative of the estate, was substituted as his successor and is the appellant here. We refer to both plaintiff and appellant as "Kennerly."
 
 
 15
 The United States and the other individual federal defendants filed a motion for summary judgment on the grounds that the IBIA's interpretation of the applicable statutes and regulations was not arbitrary or capricious and that the requirements of due process had been met. The Tribe and the individual tribal officials moved to dismiss on grounds of immunity. The district court granted both motions and Kennerly now appeals.
 
 II
 ANALYSIS
 A. Appellate Jurisdiction
 
 16
 We address as a threshold matter our jurisdiction of this appeal as a "final decision" of the district court. 28 U.S.C. Sec. 1291. The federal defendants argue that because their motion which the district court granted was denominated a motion for "partial summary judgment," the district court's opinion was not final. This position is without merit. The district court granted summary judgment in favor of the federal defendants and dismissed the complaint as to the tribal defendants; it explained that the summary judgment motion was only "partial in the sense that it affected only the federal defendants." 534 F.Supp. at 270 n. 4. This decision granting the motions on behalf of all defendants is a final decision properly within our appellate jurisdiction because it left nothing for the district court to do but execute the judgment. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); accord Anderson v. Allstate Insurance Co., 630 F.2d 677, 681 (9th Cir.1980).
 
 
 17
 B. Monetary Claim Against the Federal Defendants
 
 
 18
 The essence of plaintiff's claim is that the federal defendants deprived him of his property without the due process of law required by the fifth amendment, and in violation of their obligations as trustee of his IIM account, when the BIA transferred Kennerly's IIM account funds to the Tribe without giving him notice and an opportunity to be heard. Specifically, plaintiff points to the fact that there was no judgment either before or after these transfers concerning the validity of the debts claimed by the Tribe. He further argues that despite Kennerly's repeated requests to both federal and tribal officials for the opportunity to dispute the amounts of at least some of the claimed indebtedness, and to have his evidence considered, he received no hearing or other opportunity to present such evidence.
 
 
 19
 The government acknowledges that the district court's jurisdiction was properly based upon the Tucker Act, 28 U.S.C. Sec. 1346(a)(2) (Supp. V 1981). See, e.g., United States v. Mitchell, --- U.S. ----, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). See also Angle v. United States, 709 F.2d 570 (9th Cir.1983) (holding that the Tucker Act confers jurisdiction upon the district court to consider Indians' money damage claims against the United States for breach of trust obligations). This is not a claim for loss of intangible tribal status or privileges for which we recently held the government retains immunity. Holloman v. Watt, 708 F.2d 1399 (9th Cir.1983).
 
 
 20
 In the district court, the government argued that the informal negotiations among Kennerly, the Blackfeet Tribal Credit Committee and the Blackfeet Agency Superintendent provided Kennerly with a meaningful opportunity to raise his objections. It further argued, citing Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1925), and P.F. Petersen Baking Co. v. Bryan, 290 U.S. 570, 54 S.Ct. 277, 78 L.Ed. 505 (1934), that due process may be satisfied by an opportunity for a hearing before an administrative, non-judicial officer or board.
 
 
 21
 We agree with the government that a due process hearing need not take the form of a judicial proceeding, that an administrative hearing with an impartial decisionmaker may suffice, and that such impartial decisionmaker may come from within the agency against which the claim is made. See Goldberg v. Kelly, 397 U.S. 254, 266-67, 90 S.Ct. 1011, 1019-20, 25 L.Ed.2d 287 (1970). We cannot, however, accept the argument that "negotiations" with the Tribe, the party to whom the debt is owed, could satisfy the essential due process right to a hearing. Id. at 271, 90 S.Ct. at 1022. See also Gibson v. Berryhill, 411 U.S. 564, 578, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973); Morrissey v. Brewer, 408 U.S. 471, 485-86, 92 S.Ct. 2593, 2602-03, 33 L.Ed.2d 484 (1972); Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1279-80 (1975).
 
 
 22
 In this appeal, the government does not even attempt to argue either that the negotiations, or the administrative procedures which followed, satisfy the requirements of due process. Rather, it interposes a procedural objection to our review and suggests that in lieu of addressing the constitutional question here, we remand the case to the district court for further proceedings. The government argues that since the district court merely held that the decision of the IBIA was not arbitrary or capricious, and did not expressly rest its decision upon the constitutional arguments of the parties, it is premature for this court to decide the constitutional question.
 
 
 23
 The difficulty with the government's position is that the constitutional issue was fully briefed to the district court by both parties. The district court acknowledged plaintiff's argument concerning the lack of due process in the administrative proceedings, yet concluded that the agency procedures were satisfactory because a hearing could be held if there was a material issue of fact concerning the attachment authorizations. The court thus considered the issue by accepting the notion that the validity of the attachment authorizations was the pivotal question. See 534 F.Supp. at 276 & n. 18. Cf. Scott v. Pacific Maritime Association, 695 F.2d 1199, 1203-04 (9th Cir.1983) (issue not considered unless mentioned by parties in pretrial statement or by district court in its disposition). Moreover, we have on other occasions addressed issues of law which were never even raised in the trial court, when our consideration did not require further development of the record by the parties. See, e.g., United States v. Gabriel, 625 F.2d 830, 832 (9th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981); United States v. Patrin, 575 F.2d 708, 712 (9th Cir.1978).
 
 
 24
 None of the parties contends that it needs an opportunity to introduce further evidence concerning the constitutional propriety of the administrative procedures at issue. In fact, the parties at all times in this case have treated the facts as essentially undisputed.[1] Thus, since the government suggests no purpose for a remand to the district court other than for reconsideration of the same issue of law which was fully presented to the court before and which the appellant has fully briefed to us on appeal, it is appropriate that we consider the merits of Kennerly's constitutional claim. A remand for this reason would serve no purpose other than delay.
 
 
 25
 As to the merits of that claim, there is no dispute that Kennerly's interest in his IIM account funds is a property interest subject to due process protection. See Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972); cf. Choate v. Trapp, 224 U.S. 665, 667, 32 S.Ct. 565, 570, 56 L.Ed. 941 (1912). There is also no question that as a result of the actions by the United States and its officials, which include the payment of account funds to the Tribe and the adverse determination of Kennerly's administrative challenges to such payments, plaintiff has been permanently deprived of this interest. A fundamental constitutional principle is that some form of hearing, with notice of its availability, must occur before a person is finally deprived of a property interest. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), citing Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 2975-76, 41 L.Ed.2d 935 (1974).
 
 
 26
 The Supreme Court has held in situations analogous to the one in this case that the seizure of goods or the garnishment of wages to ensure debt repayment prior to judgment violates due process absent an opportunity for a hearing prior to the seizure or garnishment. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). As noted above, the negotiations which took place prior to the attachments of Kennerly's account funds clearly did not satisfy due process requirements.
 
 
 27
 Nevertheless, we recognize that in some cases due process may be satisfied by a prompt post-deprivation hearing if that opportunity is afforded prior to the final termination of a property interest and if the length or severity of the deprivation does not itself constitute a serious loss. See Mathews v. Eldridge, 424 U.S. at 340-47, 96 S.Ct. at 905-08; cf. Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (court ordered seizure prior to judgment upheld despite no notice or hearing because no final termination of interest until court judgment entered). It is therefore possible to argue that the government could validly have made the payments to the Tribe on a temporary basis pending a hearing or other proceeding to determine the validity of the underlying obligation.
 
 
 28
 We need not, however, decide whether such post-deprivation hearing procedures would be adequate in cases such as this. The defendants in this case never contemplated or held any hearing, either before or after drawing against Kennerly's IIM account, that aimed to determine even provisionally the validity of his debt to the tribe. Nor has there ever been any formal determination that the debt was, in fact, valid. In the administrative proceedings which followed the attachments, the BIA officials accepted the Tribe's unilateral decision on the issue of validity; the only question considered was whether the assignments themselves were approved as required by regulation. In this context, where assignments are executed as security for an underlying debt, due process requires some opportunity to be heard concerning the debt itself. See Sniadach v. Family Finance Corp., 395 U.S. at 343, 89 S.Ct. at 1823 (Harlan, J. concurring); Friendly, "Some Kind of Hearing," supra at 1281 (fundamental aspect of due process is opportunity to present reasons why proposed action should not be taken).[2]
 
 
 29
 The lack of any proper hearing in this case which would satisfy due process means that the question whether adequate notice was given is immaterial. Because Kennerly had no opportunity for a proper hearing at which he could have his objections considered, we need not decide whether the notice he received would have been sufficient otherwise.
 
 
 30
 The federal defendants in this case failed to provide or even seek on behalf of Kennerly, the beneficiary of the trust, the protections required by procedural due process. We therefore must remand for consideration of the appropriate remedy, including what damages may be assessed against the federal defendants for breach of trust. Because the attachment violated due process and is void, the district court should also consider whether any sums have been segregated by the government but unpaid to the Tribe which could be immediately credited to the IIM account.
 
 
 31
 C. Claims Against the Tribe and Its Officers
 
 
 32
 The district court correctly held that plaintiff's suit against the Tribe was barred under the doctrine of sovereign immunity. The common law immunity of the Tribe is coextensive with that of the United States and similarly subject to the plenary control of Congress. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); Puyallup Tribe v. Department of Game of Washington, 433 U.S. 165, 173, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977). Thus, since there has been no express waiver or consent to suit, nor any congressional authorization for such a suit against the Tribe, we are without jurisdiction. See Santa Clara Pueblo, supra. Cf. Merrion v. Jicarrilla Apache Tribe, 617 F.2d 537 (10th Cir.1980) (en banc), aff'd, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (express consent to suit).
 
 
 33
 Plaintiff nevertheless seeks to create a broad exception to sovereign immunity from language in Eastport Steamship Corp. v. United States, 372 F.2d 1002, 178 Ct.Cl. 599 (1967), where the court permitted a suit against the United States for "money improperly exacted or detained." His reliance on this case is, however, misplaced. The court in Eastport Steamship was construing the waiver of immunity contained in the Tucker Act, 28 U.S.C. Sec. 1491. It did not create an additional judicial exception to sovereign immunity in the absence of a statute granting jurisdiction to the courts. See United States v. Testan, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).
 
 
 34
 The situation with respect to the individual tribal defendants is different; the officials of the Tribe do not have the same immunity as the Tribe itself. See Santa Clara Pueblo, 436 U.S. at 59, 98 S.Ct. at 1677. The district court held that these officials had immunity, however, on the ground that the dispute in this case is intra-tribal and that such controversies are, under the Supreme Court's decision in Santa Clara Pueblo, beyond the jurisdiction of the federal courts. 534 F.Supp. at 277-78. The court stated that redress should be sought in tribal court under the Indian Civil Rights Act, 25 U.S.C. Secs. 1301-1303. Id. at 278.
 
 
 35
 Plaintiff on appeal emphasizes that the tribal officials were acting in conjunction with the federal government in this case, and that this is not purely an intra-tribal dispute. He seeks to fashion a federal remedy against the tribal officials by applying principles developed in cases brought against private individuals under 42 U.S.C. Sec. 1983, and against federal officials under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Specifically, he argues that since, under the rationale of Bivens, a cause of action exists against individual federal agents when they violate the fifth amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), a federal cause of action should exist against private individuals who engage in a conspiracy or act in concert with those agents. He asks this court to draw an analogy to section 1983 suits against private individuals wilfully participating in joint action with state officials. See, e.g., Adickes v. S.H. Kress and Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156-57, 16 L.Ed.2d 267 (1966).
 
 
 36
 This court recently discussed a similar argument in Fonda v. Gray, 707 F.2d 435, 437 (9th Cir.1983), where we noted that no case has yet expressly recognized a Bivens cause of action against private parties, but declined to decide the issue because there was insufficient evidence in that case that the private individuals deliberately participated in the federal agents' allegedly unconstitutional activities.
 
 
 37
 Here, too, we may assume without deciding that a Bivens action may be brought against private individuals who have acted in concert with federal agents so as to have been "acting under color of federal law." The district court's order was still proper. As plaintiff acknowledges, under his theory the individual tribal officials would be entitled to claim the same qualified immunity accorded state and federal officials in section 1983 and Bivens actions; they are immune insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). The district court found that these tribal officials unquestionably were acting within the scope of their official capacities, and pursuant to the opinions of the BIA as to the validity and propriety of the assignments under federal regulations. Their actions were fully consistent with these government regulations and the deficiencies with respect to the hearing procedures were matters wholly beyond their control or direct knowledge. The district court therefore did not err in dismissing the complaint as to all tribal defendants.
 
 D. Injunctive Relief
 
 38
 Leo Kennerly, Sr. originally sought injunctive relief against any further attachments of his own property and sought to represent a class of all tribal members similarly situated to prevent such attachments in the future. Because of his death, the question of injunctive relief as to him is now moot. Kennerly's trust funds are part of his estate and thus subject to the probate jurisdiction of the BIA and distribution by an administrative law judge. See 43 C.F.R. Sec. 4.202 (1982). Any remaining claims the Tribe has against the estate must be filed with that administrative law judge or with the Blackfeet Agency Superintendent, and will be subject to a proper hearing during probate proceedings. See 43 C.F.R. Secs. 4.230-4.236, 4.250 (1982).
 
 
 39
 The mooting of Kennerly's individual claim for injunctive relief means that the appellant, Robert Kennerly, is not in a position to seek class action certification as a class representative. See United States Parole Commission v. Geraghty, 445 U.S. 388, 396-97, 100 S.Ct. 1202, 1208-09, 63 L.Ed.2d 479 (1980). A representative whose individual claim becomes moot may continue to represent the class if the class was duly certified prior to mootness, Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), or if the representative's claim becomes moot after a denial of certification, Geraghty, supra; Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (representation limited to appeal of certification denial). Neither circumstance is present here. The personal representative has no personal stake in injunctive relief and has not adequately shown he is in a position to provide vigorous advocacy. See Geraghty, 445 U.S. at 403-04, 100 S.Ct. at 1212. Because, however, this action was initiated and proceeded in the district court as a purported class action,[3] other similarly situated tribal members may have relied on Kennerly's asserted representation of the class. We therefore remand to the district court for consideration of possible intervention by other members of the putative class.
 
 III
 CONCLUSION
 
 40
 The judgment in favor of the federal defendants is reversed. The judgment in favor of the tribal defendants is affirmed. The case is remanded for consideration of the appropriate remedy and the availability of a new representative to pursue the class action claim for injunctive relief.
 
 
 
 *
 Honorable Robert E. Coyle, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The district court did suggest that there would have been a potentially material fact in dispute if the constitutional claim had been considered separately from the issues decided by the IBIA. 534 F.Supp. at 272 n. 9 & 277 n. 19. The court did not, however, specify what that question of fact might have been, nor do the parties. We therefore treat the case according to the undisputed facts suggested by the parties
 
 
 [2]
 Were this a case involving an assignment which was not pledged as security and which engendered no mutual obligation on the part of the assignee, we would agree that the only relevant inquiry in the hearing would be whether the assignment was properly approved. Thus, we only look at the application of 25 C.F.R. Sec. 104.9 by the BIA in its administrative proceedings in light of the facts of this case, and do not consider Kennerly's due process claims as a facial challenge to the regulation
 
 
 [3]
 There was neither a denial of class certification nor a formal certification order under Fed.R.Civ.P. 23(c)