**Mrs. Lorraine LONCASSION, Individually, and as Mother and Next Friend of Terry Loncassion, Plaintiff,**

v.

**Willis LEEKITY and the Pueblo of Zuni, Defendants.**

**Civ. No. 8793.**

United States District Court,
D. New Mexico.

Nov. 16, 1971.

Peter M. McDevitt, Gallup, N. M., for plaintiff.

Victor R. Ortega, U. S. Atty., Stephen L. ReVeal, Asst. U. S. Atty., Keleher & McLeod, John B. Tittmann, Albuquerque, N. M., for defendants.

## MEMORANDUM OPINION

BRATTON, District Judge.

This is a civil rights action in which two members of the Pueblo of Zuni seek damages from a tribal police officer and the Pueblo itself. The defendants raise three affirmative defenses: (1) lack of subject matter jurisdiction, (2) failure to state a claim upon which relief can be granted, and (3) sovereign immunity of the Pueblo of Zuni.

The complaint alleges that on January 17, 1970 at about 1:30 A.M. the defendant tribal policeman, Willis Leekity, arrested plaintiff Terry Loncassion for being drunk. Loncassion attempted to escape from custody, whereupon Leekity shot him through the torso and left arm. The plaintiffs Terry Loncassion and his mother, Mrs. Lorraine Loncassion, claim that Leekity's action was either intentional or grossly negligent and that the Pueblo was negligent in hiring and training Leekity.

### I

### JURISDICTION AND SOVEREIGN IMMUNITY

Plaintiffs bring their claims under two statutes of the United States: 42 U.S.C. § 1983 (the Civil Rights Act of 1871) and Title II of the Civil Rights

Act of 1968, 25 U.S.C. §§ 1301–1303 (hereinafter the Indian Civil Rights Act). Although the complaint does not specifically so state, jurisdiction is apparently claimed by virtue of 28 U.S.C. § 1331(a) on the basis of the above laws. Plaintiffs having satisfied the jurisdictional amount requirement of § 1331(a), the sole jurisdictional issue before the court is whether "the matter in controversy * * * arises under the Constitution, laws, or treaties of the United States."

Plaintiffs first assert that their claims arise under 42 U.S.C. § 1983.[1]

■ The statute by its terms applies only to persons acting under color of a statute, ordinance, etc. "of any State or Territory." No claim is made that defendant Leekity was acting under color of state law: as a result § 1983 is inapplicable to him in his action and the plaintiffs claims cannot be said to arise under that statute. Toledo v. Pueblo de Jemez, 119 F.Supp. 429 (D.N.M.1954); Dodge v. Nakai, 298 F.Supp. 17 (D.Ariz. 1968). This court has no jurisdiction under 42 U.S.C. § 1983.

Plaintiff also assert that their claims arise under the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303, particularly §§ 1302(2) and (8).[2]

■ By prohibiting certain conduct by Tribal governments, the Act impliedly creates rights in individuals subject to tribal authority to be free from the prohibited conduct. These plaintiffs assert violations of rights created under the Act, and therefore the action for redress of those violations arises under a law of the United States. This court has jurisdiction under 28 U.S.C. § 1331(a). Dodge v. Nakai, *supra*; Spotted Eagle v. Blackfeet Tribe, 301 F. Supp. 85 (D.Mont.1969); *Contra*, Pinnow v. Shoshone Tribal Council, 314 F. Supp. 1157 (D.Wyo.1970).

■ It has been argued that by providing the remedy of habeas corpus to those detained by a tribe,[3] Congress indicated an intent to limit the jurisdiction of federal courts under the Act to situations where an individual has been incarcerated by an Indian tribe. Violations of constitutional rights, however, do not always take the form of incarceration, and if enforcement of the Act were limited to habeas corpus proceedings, some provisions of the Act would be unenforceable and thus meaningless. Because it cannot be presumed that Congress would pass an act containing provisions which could not be enforced, the existence of the habeas corpus provision in the Act cannot be said to limit feder-

---

1. § 1983. Civil Action for deprivation of rights
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Presently material portions of the statute are:
   § 1302. Constitutional rights
   No Indian tribe in exercising powers of self-government shall—
   *     *     *     *     *
   (2) violate the right of the people to be secure in their persons, houses, papers,

and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;
   *     *     *     *     *
   (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law; * * *

3. The last section of the Indian Civil Rights Act provides:
   § 1303. Habeas corpus
   The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe.

al court jurisdiction to those proceedings.

In an attempt to preserve tribal communities as self-governing, culturally autonomous entities, federal courts have applied the legal doctrine of sovereign immunity to exempt tribes from suit absent Congressional authorization.[4] However, the doctrine of sovereign immunity is of no avail to defendant Pueblo of Zuni. Whatever immunity Indian tribes may enjoy, Congress clearly has the power to nullify it by statute.[5] Congress having exercised its power to subject tribes to suit by passing the Indian Civil Rights Act, a tribe cannot claim sovereign immunity from suit under the Act. The Act does not, in so many words, provide that a tribe may be sued under its provisions nor does it explicitly waive sovereign immunity as a defense. However, since enforcement of the provisions of the Act could only occur through suits in courts of law, the Act must be held to imply that suits may be brought under its provisions. To hold otherwise would render the Act an unenforceable admonition.

Moreover, the Pueblo has waived its claim to immunity in this case by the terms of an agreement between it and the Bureau of Indian Affairs. The Zuni Pueblo and the Bureau of Indian Affairs entered into an agreement whereby the Pueblo set up a law enforcement organization, including police officers, police equipment, facilities for prisoner care, and so on, and the Bureau of Indian Affairs provided about three-fifths of the funds. Among other things, the Pueblo agreed to "be responsible for all damages or injury to any person or to property of any character * * *," to pay attorney's fees, and to provide liability insurance to protect the Pueblo from suits brought because of wrongful conduct by tribal police officers. The terms of this contract waive the Pueblo's claim to sovereign immunity from suits claiming wrongful conduct by tribal police officers.

## II

### CLAIMS

The complaint herein, fairly construed, contains the following claims:

(1) That the tribe as an entity and through its agent Leekity, violated the provisions of the Indian Civil Rights Act by arbitrarily subjecting plaintiff Loncassion to unreasonable and excessive force;

(2) That Leekity as an individual violated the provisions of the Indian Civil Rights Act by arbitrarily subjecting plaintiff Loncassion to unreasonable and excessive force; and

(3) That the tribe violated the provisions of the Indian Civil Rights Act by negligently hiring and training Leekity.

The complaint demands compensatory and punitive damages for Terry Loncassion and damages for medical expenses and loss of services for Mrs. Lorraine Loncassion, Terry Loncassion's mother.

(1) *The claim of excessive force against the Zuni Pueblo.*

Among the rights protected by the first ten Amendments to the United States Constitution is the right to be free from arbitrary and injurious conduct by government officials. More particularly, the right to be free from unreasonable interference and use of excessive force by police officers has been held protected by the Fourth Amendment. Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970). See Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L. Ed. 1495 (1945); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963). Arbitrary action in general is also prohibited by concepts of due process of law. Screws v. United States, *supra.*

---

4. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940).

5. Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).

The similarity between the language of the Fourth and Fifth Amendments and Sections 1302(2) and (8), respectively, is striking.[6] The similarity of language and the legislative history of the Act establish that Congress intended these provisions to limit tribal governments as the Fourth and Fifth Amendments limit the federal government. It follows that the right to be free from excessive injurious force, arbitrarily inflicted, is among the rights protected by 25 U.S.C. § 1302(2) and (8).

Moreover, a claim for damages is allowable under the Indian Civil Rights Act even though that Act makes no provision therefor. "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678 at 684, 66 S.Ct. 773 at 777, 90 L.Ed 939 (footnote omitted); Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Money damages are particularly appropriate where the plaintiff has suffered personal physical injury, as alleged here.

*(2) The claim against the individual defendant.*

Defendant Leekity argues that because the Indian Civil Rights Act prohibits tribal action, he should not be subject to suit as an individual. It has been so held. Spotted Eagle v. Blackfeet Tribe, *supra.* The holding in *Spotted Eagle* was based on an analogy to the Fourth and Fifth Amendments. The court says at 301 F.Supp. 89–90:

The Indian Civil Rights Act is not, as are 42 U.S.C.A. §§ 1981 and 1982, an affirmative declaration of rights. Rather, it is negative in form and forbids certain tribal action. It is directed at a government rather than at individuals and, in this, is similar to the Fourth and Fifth Amendments to the Federal Constitution which are directed at the federal government, and the Fourteenth Amendment which is directed at state governments. The Indian Civil Rights Act cannot be held to authorize civil actions for violations of the prescribed acts by individuals.

The court then cited Bell v. Hood, 71 F. Supp. 813 (S.D.Cal.1947) a case which, on remand from the Supreme Court case of the same name, held that the Fourth and Fifth Amendments do not create a cause of action for damages against an individual.

The analogy of the Indian Civil Rights Act to the Amendments is appropriate and the law governing actions against individuals for damages under the Fourth and Fifth Amendments should be applied to the Act. The applicable law, however, is now found in the Supreme Court case of Bivens v. Six Unknown Named Agents, *supra,* in which the plaintiff brought an action for damages against individual agents of the Federal Bureau of Narcotics, grounded solely on the Fourth Amendment. The Court, 403 U.S. at 389 and 395, 91 S.Ct. at 2001, says:

"The Fourth Amendment provides that

---

6. The Fourth Amendment provides:
   The right of the people to be secure in their persons * * * against unreasonable * * * seizures, shall not be violated * * *.
   The Fifth Amendment provides:
   No person shall be * * * deprived of life, liberty, or property, without due process of law * * *.
   The Indian Civil Rights Act provides in part:

   § 1302. Constitutional Rights
   No Indian tribe in exercising powers of self-government shall—
   *     *     *     *     *
   (2) violate the right of the people to be secure in their persons * * * against unreasonable * * * seizures * * *;
   *     *     *     *     *
   (8) * * * deprive any person of liberty or property without due process of law;

'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. * * *'

In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), we reserved the question whether violation of that command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct. Today we hold that it does.

\* \* \* \* \* \*

That damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly seem a surprising proposition. Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty."

Because the principles announced in *Bivens* are applicable to the Indian Civil Rights Act, these plaintiffs are entitled to claim money damages from defendant Leekity for any injuries they suffered as a result of any violation by him of the command of 25 U.S.C. § 1302(2).[7]

(3) *The claim of negligent hiring and training against the Pueblo.*

The complaint states that the "Pueblo of Zuni was operating a police department pursuant to an agreement between the Pueblo of Zuni and the * * * Bureau of Indian Affairs * * *" This agreement, attached as an exhibit to the complaint, provides that the Pueblo of Zuni will indemnify the United States government from any claims or damages sustained as a result of the operation of the police department, that the tribe will be responsible for all damages to persons or property during the life of the agreement, and that the tribe will obtain a policy of liability insurance to protect it from claims for damages.

The complaint, fairly construed, alleges that the plaintiffs are third-party beneficiaries of the Agreement quoted above and that they are entitled to recover damages for injuries caused by negligence of the Pueblo under the provisions of the Agreement. These allegations state a claim upon which relief can be granted, which the court may hear as a pendant claim. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Spotted Eagle v. Blackfeet Tribe, *supra*.[8]

The affirmative defenses of lack of jurisdiction, failure to state a claim upon which relief can be granted, and sovereign immunity, are denied and stricken from the answer. An order in accordance with this opinion has been entered.

---

7. It is not necessary to decide whether the complaint states a claim against Leekity under 25 U.S.C.A. § 1302(8).

8. It is not necessary to decide whether an allegation of negligent hiring and training states a claim under the Indian Civil Rights Act.