Carl EVANS; Marilyn Evans, Plaintiffs–Appellants,

v.

Joe McKAY, individually and as Blackfeet Tribal Member; Glenn Little Bird; Greg Gilham; Carl Pepion, individually and as Bureau of Indian Affairs Police Officers, and as City of Browning Police Officers; City of Browning, Montana, a municipal corporation; Michael Fairbanks, individually and as Superintendent of Blackfeet agency; Dan Harwood, individually and as Administrative Officer of Blackfeet Agency; Philip Roy, individually and as Blackfeet Tribal Attorney; Richard Evans, a Blackfeet tribal member; Les Cobell, individually and as Blackfeet Game Warden; Leonard Mountain Chief, individually and as Blackfeet Tribal Council Member, Defendants–Appellees.

No. 87–3761.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1988.

Decided March 16, 1989.

---

Vance Gillette, Garrison, N.D., for plaintiffs-appellants.

Edward J. Shawaker, Washington, D.C., for federal defendants-appellees.

Ross W. Cannon, Helena, Mont., for city defendants-appellees.

Philip E. Roy, Browning, Mont., for tribal defendants-appellees.

Before FLETCHER and HALL *, Circuit Judges, and CARROLL **, District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

The plaintiffs-appellants, Marilyn Evans and her son, Carl Evans, are non-Indians residing in Browning, Montana, a city located within the boundaries of the Blackfeet Indian Reservation. The Evanses brought civil rights actions emanating from alleged deprivations by the named defendants of rights secured by the Constitution and laws of the United States. An original complaint and three amended complaints were filed. Relief was sought pursuant to 42 U.S.C. §§ 1981, 1983, 1985(2) and (3), *Bivens*, and federal common law.[1] Named as defendants were the Blackfeet Tribe of Indians ("Tribe"); Richard Evans, who is a member of the Blackfeet Tribe; certain officials and agents of the Tribe in their individual capacities; the United States of America acting through the Bureau of Indian Affairs ("BIA"); certain officers and agents of the BIA in their individual capacities; the City of Browning, Montana; and certain officials and agents of the City of Browning.

On motion of the defendants, the district court dismissed the action in its entirety. *Evans v. Little Bird,* 656 F.Supp. 872 (D.Mont.1987). The action against the Tribe was dismissed as barred by the doctrine of sovereign immunity, and against the other defendants on the ground that the complaint failed to state a claim upon which relief can be granted.

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201. This court has jurisdiction under 28 U.S.C. § 1291. The Evanses timely appeal.

I

Richard and Marilyn Evans were getting a divorce. Prior to this dissolution, the Evanses operated a business known as "Evans Chevron" which was located on the Blackfeet Indian Reservation in Browning, Montana. This business consisted of a gas station, convenience store, and tire shop. Richard Evans is a member of the Blackfeet Tribe; Marilyn Evans and her son, Carl Evans, are non-Indians.

In October 1984, Marilyn Evans was in possession of a supply of tax-free cigarettes. Tribal laws authorize the sale of tax-free cigarettes by Tribe members only. On October 19, 1984, on the petition of Richard Evans and the Blackfeet Tax Commission, the Tribal Court issued an order directing the police to seize the cigarettes and store them in a neutral place. The police in Browning operate in a dual capacity—as law enforcement officers of the Bureau of Indian Affairs (BIA), and of the City of Browning. On October 1, 1981, the

---

* Judge Hall was drawn to replace the late Judge J. Blaine Anderson on this panel. Judge Hall has read the briefs and reviewed the record.

** The Honorable Earl H. Carroll, United States District Judge, District of Arizona, sitting by designation.

1. On appeal, the Evanses have withdrawn all of their claims except for those pursuant to 42 U.S.C. §§ 1981 and 1983.

Blackfeet Tribe retroceded its law enforcement program to the BIA. As a result, the BIA police also enforce tribal law on the reservation.

On October 19, 1984, the police attempted to take possession of the cigarettes. Although allegedly detained for over one hour, Mrs. Evans refused to give up the cigarettes. On October 23, 1984, the police again attempted to seize the cigarettes pursuant to the Tribal Court order. Mrs. Evans and Carl resisted the police. Pursuant to Browning city ordinance 9.04.010, they were arrested for interfering with the police in the performance of their duties. The cigarettes were seized on that same day.

On August 22, 1985, the Tribal Court issued an order for the seizure of certain tire repair equipment in the possession of Marilyn Evans. The police allegedly detained the Evanses for one hour while Richard Evans seized assets from Evans Chevron. Carl Evans again was arrested pursuant to the city ordinance for resisting the police.

## II

We review de novo a dismissal for failure to state a claim. *Mullis v. Bankruptcy Court,* 828 F.2d 1385, 1388 (9th Cir.1987). In reviewing such a dismissal, it must appear to a certainty that plaintiffs would not be entitled to relief under any set of facts that could be proved. *Id.* All material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir.1986). All other questions presented by this appeal are issues of law which this court reviews de novo. *See Big Spring v. United States BIA,* 767 F.2d 614, 616 (9th Cir.1985), *cert. denied,* 476 U.S. 1181, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986).

## III

Appellants contend that their claim under 42 U.S.C. § 1981[2] against the individu-

al defendants was sufficient to withstand a Rule 12(b)(6) motion to dismiss. The district court dismissed the appellants' claim on the basis that the pleadings contained only bare allegations of a conspiracy and that the appellants "fail[ed] to allege facts to show the existence of a conspiracy designed to deprive the Evans equal protection, privilege or immunity under the law because of their race." *Evans,* 656 F.Supp. at 876.

■ Contrary to the district court's assessment, claims under 42 U.S.C. § 1981 do not require allegations of conspiracy. *See Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). What is required in a section 1981 action, however, is that the plaintiffs must show intentional discrimination on account of race. *Lowe v. City of Monrovia,* 775 F.2d 998, 1010 (9th Cir.1986), *as amended,* 784 F.2d 1407 (9th Cir.1986); *see also General Bldg. Contractor Ass'n v. Pennsylvania,* 458 U.S. 375, 387–91, 102 S.Ct. 3141, 3148–50, 73 L.Ed.2d 835 (1982). Section 1981 prohibits private racial discrimination against white persons as well as against nonwhites. *See McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 296, 96 S.Ct. 2574, 2586, 49 L.Ed.2d 493 (1976).

In the instant case, the appellants alleged that because of their race, the individual defendants instigated an "arrest-boycott conspiracy" in an effort "to drive plaintiffs out of business, run them off the Reservation, and violate their civil rights." Appellants further alleged that as a result of the individual defendants' acts and racial slurs, they suffered personal and economic harm, along with a deprivation of their civil rights. The overt acts of racial discrimination and conspiracy set forth in their complaint consist of an "order" by BIA defendants Fairbanks and Harwood "that BIA police and roads employees not ... get gas

---

2. Section 1981 provides that all persons "shall have the same right in every State and Territory to make and enforce contracts, ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...."

from Marilyn Evans." A similar allegation is made against a member of the Tribal Council, Mountain Chief, with respect to his alleged "order" to the tribal game warden, Cobell, and "others" not to do business with the appellants. The Evanses also assert that a sufficient allegation of racial animus was pleaded in a statement by Mountain Chief that "whites have no rights on the reservation."

■ This court has recently held that overt acts coupled with racial remarks are sufficient to state a claim under 42 U.S.C. §§ 1985(2) and (3). *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987).[3] In *Usher*, a black male brought an action against the City of Los Angeles and City police officers for violations of his civil rights. In his complaint, Usher alleged that he was arrested without cause, held handcuffed for several hours and denied toilet privileges, and then prosecuted under contrived charges; he specifically alleged that in the course of his arrest he was called a "nigger" and a "coon." The court stated that by pleading that racial slurs were directed against him, Usher made an allegation of racial animus sufficient to survive a motion to dismiss. *Id.* at 561.

■ Similarly, the Evanses have pleaded overt acts coupled with some direct evidence that the defendants' conduct was motivated by racial animus. At this stage of the proceedings, we have to assume the truth of the allegations in the complaint relating to a racially-motivated "arrest-boycott conspiracy," and construe them in the light most favorable to the appellants. We

conclude that the Evanses have pleaded sufficient facts to defend their section 1981 claim against a 12(b)(6) motion, and that the district court erred in dismissing that claim.

## IV

Appellants next contend that the district court erred in dismissing their 42 U.S.C. § 1983 action against the Tribe,[4] the individual defendants, and the City of Browning for failure to state a claim. To determine whether the appellants' complaint was sufficient to state a claim under section 1983, we look to each of these three classes of defendants in turn.

## A

The district court held that the claims against the Tribe were barred by the doctrine of sovereign immunity. Appellants contend that certain provisions of the Indian Self–Determination Act ("ISDA" or "the Act"), 25 U.S.C. §§ 450–458e (1982 & Supp. IV 1986), or the terms of certain contracts authorized by those statutory provisions, constitute a waiver or abrogation of the Tribe's sovereign immunity.

■ The common law immunity afforded Indian tribes is coextensive with that of the United States and is similarly subject to the plenary control of Congress. *Kennerly v. United States*, 721 F.2d 1252, 1258 (9th Cir.1983). Absent express waiver, consent by the Tribe to suit, or congressional authorization for such a suit, a federal court is without jurisdiction to entertain

---

**3.** Although *Usher* involved a claim based on sections 1985(2) and (3), the case is still relevant for determining whether appellants here have sufficiently pleaded racial animus to withstand a Rule 12(b)(6) motion. As with section 1981, sections 1985(2) and (3) require a plaintiff to plead racial animus. We see no reason why the applicable standard of proof on the element of racial animus in the pleading stages of a civil rights action would be different for section 1985 and section 1981 claims.

**4.** It is unclear whether appellants continue to seek review of the district court's dismissal of their section 1983 claim against the Blackfeet Tribe. In their opening brief, the Evanses stated one of the issues raised on appeal as follows:

"Under 42 U.S.C. § 1983, do white plaintiffs state a claim against the city, police and Indian defendants for detentions and false arrests made without warrants?" In their Third Amended Complaint, the class of "Tribal defendants" is defined to include the Blackfeet Tribe, as well as various individual Indians described by name and tribal office.

At oral argument and in subsequent communications with this court, appellants abandoned certain of their claims and "narrowed" the issues presented for appeal. Because the status of appellants' section 1983 claim against the Blackfeet Tribe is uncertain after these communications, we feel constrained to decide that issue as originally stated and argued in their briefs.

claims advanced against the Tribe. *Id.* at 1258–59. Moreover, a waiver of sovereign immunity must be "unequivocally expressed." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)).

The ISDA permits the various Indian tribes, *inter alia,* to contract with the Secretary of the Interior to furnish services previously administered by the federal government. 25 U.S.C. § 450f. The ISDA further vests the Secretary with discretion to require any tribe requesting such a contract to obtain adequate liability insurance. Specifically, the Act provides that:

> The Secretary is authorized to require any tribe requesting that he enter into a contract pursuant to the provisions of this subchapter to obtain adequate liability insurance: *Provided, however, That each such policy of insurance shall contain a provision that the insurance carrier shall waive any right it may have to raise as a defense the tribe's sovereign immunity from suit,* but that such waiver shall extend only to claims the amount and nature of which are within the coverage and limits of the policy and shall not authorize or empower such insurance carrier to waive or otherwise limit the tribe's coverage and limits of the policy of insurance.

25 U.S.C. § 450f(c) (emphasis added). It is this section of the ISDA upon which the appellants primarily rely to support their argument that the Tribe has waived its sovereign immunity.

While requiring a tribe to obtain liability insurance as a condition precedent to con-

tractual performance authorized by the Secretary, section 450f(c) clearly addresses, as is evident in the caveat of that subsection, the rights and limitations of the insurance carrier, not the Tribe. This provision expressly precludes the *insurer* from defeating a claim covered by the policy by an invocation of the tribe's sovereign immunity.

Appellants also appear to argue that certain contractual provisions constitute a waiver of the Tribe's sovereign immunity. Clause 9 of the Tribal–BIA standard form contract authorized by the ISDA states in pertinent part:

> (a) *The contractor [tribe] shall indemnify and save and keep harmless the Government* against any or all loss, cost, damage, claim, expense or liability whatsoever, because of accident or injury to persons or property or others occurring in connection with any program included as a part of this contract, and provide where applicable, the insurance described below.

> (b) The contractor shall secure, pay premium for, and keep in force until the expiration of this contract or any renewal period thereof, insurance as provided below. Such insurance policies shall specifically include a provision stating the liability assumed by the contractor under this contract.

*See* 25 C.F.R. Pt. 271 (1987). By this contractual provision, the Tribe agrees only to indemnify the *government* should the *government* become liable in connection with any program included as a part of the contract.[5]

◼ We believe that if section 102(c) of the ISDA, along with the Tribe–BIA con-

---

**5.** Appellants rely on *Loncassion v. Leekity,* 334 F.Supp. 370 (D.N.M.1971) as authority for their argument that the Tribal–BIA contract in the instant case was itself a waiver of sovereign immunity. Appellants' reliance on *Loncassion* is misplaced. In *Loncassion,* the court found a general waiver of the tribe's sovereign immunity in an agreement, executed by the tribe and the BIA to develop a law enforcement program, which contained a provision requiring the tribe to be "responsible for all damages or injury to any person or property ... because of wrongful conduct of its officers." 334 F.Supp. at 373.

The provision at issue in the instant case states only that "the contractor [tribe] shall *indemnify* and save and keep harmless *the government* against any or all loss, costs, damages ... occurring in connection with any program included as a part of this contract." By this indemnification provision, the Tribe agrees only to be secondarily responsible for damages that may be assessed against the United States. It cannot reasonably be construed as a general waiver of the Tribe's sovereign immunity.

tract executed under the authority of that section, constitutes a waiver of sovereign immunity, it is only a very limited waiver authorizing the United States government to claim indemnity against the Tribe.[6] Our conclusion is bolstered by another section of the ISDA in which Congress has plainly stated that:

Nothing in this Act shall be construed as—

(1) affecting, modifying, diminishing, or otherwise impairing the sovereign immunity from suit enjoyed by an Indian tribe[.]

25 U.S.C. § 450n(1). In light of this clear Congressional directive, and our own analysis of the relevant statutory and contractual provisions, we hold that neither section 102(c) nor the Tribe–BIA contract constitute a waiver of the Tribe's sovereign immunity. The district court properly dismissed the appellants' section 1983 claim against the Blackfeet Tribe for want of jurisdiction.

### B

The district court also concluded that the section 1983 claims against the individual police officers and tribal defendants were beyond the jurisdiction of the federal courts. It held that because any alleged deprivation of the appellants' civil rights were accomplished under the color of tribal law, redress must be sought in the appropriate tribal court under the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303 (1982 & Supp. IV 1986). *Evans v. Little Bird,* 656 F.Supp. at 874 (citing *Kennerly v. United States,* 534 F.Supp. 269, 278 (D.Mont.1982), *rev'd in part on other grounds,* 721 F.2d 1252 (9th Cir.1983)). This court has since held, in agreement with the district court, that actions under section 1983 cannot be maintained in federal court for persons alleging a deprivation

of constitutional rights under color of tribal law. *R.J. Williams Co. v. Fort Belknap Housing Authority,* 719 F.2d 979, 982 (9th Cir.1983), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

To maintain an action under section 1983 against the individual defendants, the Evanses must instead show: (1) that the conduct complained of was committed by a person acting under the color of *state* law; and (2) that this conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). The Supreme Court has established that the state action requirement in a section 1983 claim is satisfied when the party charged with an alleged constitutional deprivation "may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). To determine whether the Evanses' complaint was sufficient to state a claim under section 1983 against the individual police officers and tribal defendants, we will look at each of these two classes of defendants in turn.

### 1

Appellants' section 1983 claim against the individual police officers arises out of the execution of orders of the Blackfeet Tribal Court. One such order was sought and obtained by the Blackfeet Tax Commission to enforce tribal laws restricting the sale of tax-free cigarettes by non-Tribe members such as of Marilyn Evans. The Tribal Court orders were executed, however, by police officers of the City of Browning who also happen to be agents of the BIA. The contract between the City of Browning and the BIA empowered the police officers to provide law enforcement

---

**6.** These statutory and contractual provisions might come into play in the following situation. A third party who is injured by a BIA agent could bring an action against the government under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or the Federal Tort Claims Act. The government would then bring a third-party claim against the Tribe, pursuant to the Tribe–BIA contract, seeking indemnification. The Tribe, in turn, would call upon its insurer to indemnify the Tribe for its liability to the government. At that juncture, the insurance company would be precluded from asserting that it has no duty to indemnify the government because of tribal immunity.

protection to the residents of the City and to enforce city ordinances.[7]

The allegedly unconstitutional arrests were made pursuant to a City of Browning ordinance prohibiting the obstruction of justice. While these law enforcement officers may be said to have been acting pursuant to Tribal Court orders during the incidents in question, they were also allegedly and arguably acting in their capacity as City of Browning police officers.

In their third amended complaint, the appellants expressly alleged that "[t]he city police acted under color of state law in arresting white Plaintiffs without a warrant." Given this explicit allegation of official state authority, coupled with the "peculiar" law enforcement situation as it exists on the reservation, we conclude that the appellants have sufficiently pleaded action under color of state law to withstand a Rule 12(b)(6) motion.[8]

As to the second element of their section 1983 cause of action, the appellants have alleged that the police officers detained and arrested them without a warrant and without probable cause. Taking these allegations as true, as we must, the Evanses have sufficiently alleged that they were deprived of a federally protected right, entitling them to relief under section 1983. *See Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986) (individual's allegations of unlawful arrest without probable cause

stated claim for relief under section 1983); *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir.1984) (an arrest without probable cause gives rise to a cause of action for damages under section 1983).

We conclude that the judgment of the district court granting defendants' motion to dismiss the appellants' section 1983 claim against the individually named police officers must be reversed.

2

 Insofar as the individual tribal defendants are concerned, we likewise conclude that the appellants alleged sufficient facts to withstand a motion to dismiss. It is well established that private parties who act in concert with officers of the state are acting under the color of state law within the meaning of section 1983. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. at 930–31, 102 S.Ct. at 2750–51. In their third amended complaint, the appellants allege that the individual tribal defendants acted jointly with the City police in instigating the seizures and arrests at issue. For purposes of this appeal, we must assume the veracity of the allegations contained in the appellants' complaint. Since the alleged conduct, if proven, would support a claim under section 1983, we are compelled to reverse the district court's dismissal of these particular defendants as well.[9]

---

7. The Blackfeet Tribe retroceded its law enforcement program to the BIA; as a result, the BIA police also enforce tribal law on the reservation.

8. The police officers also argue that they are entitled to a qualified immunity from liability for damages for deprivation of an individual's civil rights. *See Procunier v. Navarette*, 434 U.S. 555, 561–62, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978) (in section 1983 actions for damages defendants are entitled to a qualified immunity from liability based on good faith belief in the propriety of their actions and reasonable grounds for that belief). Qualified or "good faith" immunity is, however, an affirmative defense that must be pleaded by a defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1981). Because answers have not yet been filed in this case, the issue of qualified immunity was not raised or decided below. We decline to reach it for the first time on appeal.

The city police also argue that they executed a facially valid court order and that they, therefore, are entitled to quasi-judicial immunity. *See Coverdell v. Dept. of Social and Health Services*, 834 F.2d 758, 764–65 (9th Cir.1987). Clearly, the city police did not rely on the Tribal Court order to arrest the appellants. The order simply mandated the seizure of cigarettes and tire repair equipment. The Tribal Court order, moreover, did not "plainly authorize" the arrests of the appellants. *See Coverdell*, 834 F.2d at 765. Rather, the arrests were based on a City of Browning ordinance prohibiting the obstruction of justice.

9. While officials and agents of an Indian tribe do not have the same immunity as the tribe itself, *Kennerly*, 721 F.2d at 1259, tribal immunity nevertheless extends to individual tribal officials while "acting in their representative capacity and within the scope of their authority." *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir.1985). *See also United*

## C

 Appellants' third amended complaint also included a section 1983 claim for municipal liability against the City of Browning. A local governmental entity may be sued under section 1983 where the alleged constitutional deprivation was inflicted in execution of an official policy or custom. *Monell v. New York Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). It is improper to dismiss on the pleadings alone a section 1983 complaint alleging *municipal liability,* even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, conduct or practice. *See Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621, 624 (9th Cir.1988); *Shah v. County of Los Angeles,* 797 F.2d 743, 747 (9th Cir.1986).

 Contrary to the district court's determinations, the appellants' complaint sought to establish the City's section 1983 liability on the basis of official policies and customs, and not on a theory of *respondeat superior.* In their complaint, the appellants alleged that the City of Browning had a "custom or practice of using city police to detain and arrest white persons based on tribal orders." Because this allegation, which must be taken as true, is sufficient to give rise to a cause of action against the City under section 1983, the district court erred in dismissing the claim.

## V

Accordingly, the district court's dismissal of the appellants' section 1981 claim is reversed. The dismissal of the appellants' section 1983 claim against the Blackfeet tribe is affirmed. The dismissal of the

appellants' section 1983 claims against the individual defendants and the City of Browning is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

Each party shall bear their own cost.

States v. Yakima Tribal Ct., 806 F.2d 853, 861 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987). Although the allegedly unconstitutional arrests and seizures of which the Evanses complain were accomplished pursuant to orders of the Tribal Court, we disagree with the district court's conclusion that the individual tribal defendants were "at all times pertinent to this action, acting within their official capacities and under authority of tribal law." *See Evans v. Little Bird,* 656 F.Supp. at 875. If appellants are able to prove

that the individual tribal defendants acted in concert with the police defendants, whose actions we have here held to be "under color of state law," their actions cannot be said to have been authorized by tribal law. *Cf. Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1907) (enforcement of unconstitutional act by state official is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity).