**William BREW, Plaintiff,**

v.

**CITY OF EMERYVILLE, Police Chief Kenneth James, Police Sergeant Frank Sierras, Police Officer Michael McGinn, Victor Aissa, Robert Aissa, Michael Aissa, Michael Ohayon, Defendants.**

**No. C–99–4720–PJH.**

United States District Court, N.D. California.

April 2, 2001.

Myrna G. Alvarez, Oakland, CA, Brook Brigham, Oakland, CA, for William Brew.

Joel Zeldin, Barbara W. Staman, Shartsis, Friese & Ginsburg LLP, San Francisco, CA, Michael G. Biddle, Lynn Tracy Nerland, City of Emeryville, Office of the City Atty., Emeryville, CA, for City of Emeryville, Police Chief Kenneth James, Frank Sierras, Michael McGinn.

P. Richard Colombatto, Michael K. Tcheng, Misciagna & Colombatto, San Francisco, CA, for Victor Aissa.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND REMANDING STATE CAUSES OF ACTION

HAMILTON, District Judge.

The motion of defendants City of Emeryville, Police Chief Kenneth James, Police Sergeant Frank Sierras, and Police Officer Michael McGinn ("Emeryville defendants") for summary judgment came on for hearing on March 28, 2001, before this court, the Honorable Phyllis J. Hamilton presiding. Also before the court were plaintiff's motion for extension of time to complete discovery, and the Emeryville defendants' motion to strike the declaration of David Hicks. The Emeryville defendants appeared by their counsel Joel Zeldin, plaintiff William Brew appeared by his counsel Myrna Alvarez, and defendant Victor Aissa appeared by his counsel Richard Colombatto. Having carefully reviewed the parties' papers and considered the arguments of counsel and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion for summary judgment, DENIES the motion to extend discovery, and GRANTS the motion to strike the declaration of David Hicks.

### BACKGROUND

Plaintiff William Brew was a part owner of a pool hall that formerly operated in Emeryville, California. Brew had an ongoing dispute with the other pool hall investors, defendants Victor Aissa, Robert Aissa, Michael Aissa, and Michael Ohayon ("investor defendants"). Brew alleges that he sustained ongoing racial harassment which escalated into an "incident" on September 1, 1998. On this date, the investor defendants allegedly tried to "take over" the pool hall. On his way to the pool hall, Brew called the police to ask for their assistance. Brew arrived at the pool hall with a loaded gun in his briefcase. A scuffle ensued, and the investor defendants wrestled Brew to the ground and placed him in handcuffs. The janitor of the pool hall and another building tenant called the police. When the police arrived they separated the investor defendants from Brew. Brew alleges that defendant Officer McGinn "left Brew lying on the ground handcuffed for about five minutes" and "pushed his knee against the plaintiff's shoulder." Brew, still handcuffed, was then placed in the backseat of a patrol car so that the officers could question all involved in the incident. Brew was in handcuffs for a total of fifteen to twenty minutes. The police officers eventually cited Brew for carrying a concealed weapon without a license (California Penal Code § 12025(a)(2)) and carrying a loaded weapon (California Penal Code § 12031(a)(1)) and then released him on his own recognizance.

Brew brought this civil rights action against the investor defendants and the Emeryville defendants. His original complaint alleges sixteen causes of action including assault and battery, false imprisonment, false arrest, conspiracy to commit racial battery, violation of civil rights, and conspiracy to violate civil rights. The fourth, sixth, seventh, eighth, ninth, tenth, eleventh and sixteenth causes of action were previously dismissed. The Emeryville defendants now seek summary judgment on the claims remaining against them and to strike David Hick's declaration, and plaintiff seeks an extension of time for discovery.

### DISCUSSION

I. *Summary Judgment Motion*

A. *Legal Standard*

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

### B. *Defendants' Motion for Summary Judgment*

Four causes of action against the Emeryville defendants remain in this lawsuit. They include claims under 42 U.S.C. § 1983 for false arrest, 42 U.S.C. §§ 1981 and 1983 for discriminatory treatment in violation of plaintiff's right to equal protection, and 42 U.S.C. §§ 1985 and 1986 for conspiracy to violate civil rights. The Emeryville defendants seek summary judgment on each of these claims.

#### 1. *Preliminary Issues*

Plaintiff's thirteenth cause of action (discriminatory treatment in violation of plaintiff's right to equal protection under 42 U.S.C. §§ 1981 and 1983) references various incidents of alleged harassment that occurred prior to the September 1, 1998 incident. The alleged harassment is also set forth in the complaint as "Facts Common to All Causes of Action." Plaintiff argues that this harassment violated his right to equal protection under the Fourteenth Amendment. Defendants argue that these incidents are barred by the statute of limitations and that plaintiff does not have standing to assert claims that arise from them.

##### a) *Statute of Limitations*

The Emeryville defendants argue that plaintiff's claims of ongoing harassment are barred by the one year statute of limitations applicable to § 1983 claims. Defendants refer to the three letters plaintiff wrote on July 28, 1998 detailing the alleged pre-September 1, 1998 harassment. These letters were written more than one year before he filed this action on August 31, 1999. Plaintiff counters that the harassment that occurred before September 1, 1998 was part of an ongoing, continuing violation of § 1983, and that a nexus exists between the pre-September 1, 1998 harassment and the September 1, 1998 incident.

The Ninth Circuit has widely recognized a continuing violation theory for § 1983 claims in the employment context. In *Green v. Los Angeles Superintendent of Schools,* the court explained that in order to establish a continuing violation, the plaintiff must show a discriminatory policy or "a series of related acts, one or more of which falls within the limitations period...." 883 F.2d 1472 (1989) (citations omitted). This continuing violation theory has been extended beyond the employment arena provided that an appropriate factual basis for its application exists. For example, the Ninth Circuit considered and rejected the continuing violation theory for a plaintiff who brought § 1983 claims against the Town of Woodside over a long-running dispute about plaintiff's attempt to build a house. *Bullock v. Town of Woodside,* 2000 WL 734513, *2, 2000 U.S.App. LEXIS 12814, *7–8 (9th Cir.2000) (citations omitted). In *Bullock,* plaintiff complained of "a sporadic series of independent land use decisions—code changes, zoning changes, permit denials, and the like—spanning a 12–year period." *Id.* at *2, 2000 U.S.App. LEXIS 12814, *8. The court explained, "plaintiff has alleged a series of acts, but has not provided any reason, other than his bare allegations, to view those acts as a single, continuing violation." *Id. See also Nieves v. McSwee-*

*ney,* 241 F.3d 46, 50 (1st Cir.2001) ("a section 1983 claim accrues at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim"); *Honorable v. The Easy Real Estate System,* 182 F.R.D. 553, 564 (N.D.Ill. 1998) ("The continuing violation doctrine is not available if the plaintiff knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him.") (citation omitted).

■ Here, much of the harassment that plaintiff refers to was not harassment of himself. The harassment included the Emeryville police department's questioning customers, arresting a manager of the pool hall for failure to have a cabaret license, surveillance of the pool hall, and inspecting the cars in the parking lot for violations. As in *Bullock,* plaintiff has not provided any specific reason why or how these incidents are related to those on September 1, 1998. Thus, the continuing violation theory does not apply to this case.

b) *Standing*

■ A federal court's judicial power extends to cases arising under the laws of the United States. U.S. Const., art. III, sec. 2. A litigant must do more, however, than merely allege that a violation of federal law has occurred; the litigant must have standing to invoke the power of the federal court. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–72, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Standing is a jurisdictional limitation. It is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The burden is on the party who seeks the exercise of jurisdiction in his or her favor to "clearly ...

allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

■ To establish a "case or controversy" within the meaning of Article III, a plaintiff must, at an "irreducible minimum," show an "injury in fact" which is concrete and not conjectural, a causal connection between the injury and defendant's conduct or omissions, and a likelihood that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130. Added to these basic requirements are several judicially created prudential limitations—the requirements that a plaintiff's claim fall within the zone of interests sought to be protected by the statute or constitutional guarantee in question; that the claim be for injury to the plaintiff's own legal rights and interests, rather than the legal rights or interests of third parties; and that the injury be individualized or confined to a discrete group. *Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. 752 (citation omitted); *see also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

■ Plaintiff's complaint sets forth many instances of alleged harassment that took place prior to the September 1, 1998 incident. Defendants assert that if there is to be a claim for the alleged harassment before September 1, 1998, such claim belongs to Bankshot Billiards, the owner of the pool hall. Plaintiff argues that he had a "superior interest" to any other shareholder in the pool hall, and that he has the "requisite personal stake in the outcome of the suit," *citing Barlow v. Collins,* 397 U.S. 159, 172, 90 S.Ct. 832, 25 L.Ed.2d 192 (1969). As discussed above, plaintiff was not involved in most of the pre-September 1, 1998 incidents of alleged harassment. Further, he was not the sole owner of the

pool hall. According to plaintiff's own deposition testimony, he owned less than half of the pool hall. *See* Declaration of Joel Zeldin, ¶ 5 filed on February 21, 2001, Exhibit 4. Plaintiff's assertion that he had a "superior interest" in the business is thus incorrect. Any claims regarding pre-September 1, 1998 harassment thus belong to Bankshot Billiards. Because the pre-September 1, 1998 claims of harassment are time barred and because plaintiff lacks standing to pursue them, this court will disregard them.

### 2. *Remaining Causes of Action Against Emeryville Defendants*

#### a) *False Arrest (42 U.S.C. § 1983)*

■ In his twelfth cause of action, plaintiff alleges that defendants the City of Emeryville, Police Chief James, and Police Officer McGinn arrested him without a warrant and without probable cause in violation of his due process rights of the Fourteenth Amendment and unlawfully seized him in violation of the Fourth Amendment. A claim of false arrest is cognizable under § 1983 for violation of the Fourth Amendment's prohibition against unreasonable search and seizure if the allegation is that the arrest was without probable cause or other justification. *See Pierson v. Ray*, 386 U.S. 547, 555–58, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993). There is no substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal arrest or prosecution except upon probable cause. Relief is only available under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 268–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Sanders v. Kennedy*, 794 F.2d 478 (9th Cir.1986). Any wrongful arrest should therefore be viewed under the Fourth Amendment's

"reasonableness" standard. *Larson*, 9 F.3d at 1400.

■ To establish a claim under § 1983, a plaintiff must show that a defendant, acting under color of state law, deprived plaintiff of a constitutional right. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). A person acts under the color of state law if the person "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citation omitted).

In support of his claim for false arrest, plaintiff asserts that defendant Officer McGinn arrived at the scene when plaintiff was already in handcuffs that were applied by the investor defendants. McGinn left plaintiff in the handcuffs and "locked" him in the backseat of the patrol car for approximately 15–20 minutes. Plaintiff also raises several irrelevant issues, such as whether the misdemeanor charges were valid, whether the investor defendants are "owners" of the pool hall, and if and when plaintiff drew his gun. These issues, however, have no bearing on the claim of false arrest.

The fact that plaintiff was in handcuffs and placed in the backseat of a patrol car does not in and of itself indicate that he was under arrest. In *Allen v. Singer*, the Ninth Circuit determined whether police officers "arrested" one of the passengers in the infamous Rodney King incident. 66 F.3d 1052 (9th Cir.1995). After an eight-mile high-speed chase, the passenger was forced to lie down on the ground, and was handcuffed, frisked, placed in a patrol car, and questioned. *Id.* at 1054. In approximately 24 minutes, the officers determined that the passenger was not involved in any wrongdoing and released him. *Id.* The

Ninth Circuit found that the passenger was not under arrest and explained that "police officers are entitled to employ reasonable means to protect themselves and others in potentially dangerous situations.... Police officers also need not avail themselves of the least intrusive means of responding to an exigent situation.... [And] the relevant inquiry is always one of reasonableness under the circumstances." *Id.* at 1056–57 (citations omitted).

 Here, plaintiff was already in handcuffs when Officer McGinn arrived at the scene. Leaving plaintiff in handcuffs for 15–20 minutes, however, was not unreasonable considering the obvious animosity between the plaintiff and the investor defendants. Accordingly, summary judgment is GRANTED on the § 1983 false arrest claim.

b) *Discriminatory Treatment (42 U.S.C. §§ 1981 and 1983)*

In his thirteenth cause of action, plaintiff brings claims under §§ 1981 and 1983 alleging that the defendants' acts and omissions before and on September 1, 1998 resulted in discriminatory treatment in violation of his right to equal protection. He asserts that these acts and omissions were motivated by defendants' discriminatory attitude towards African Americans.

 Section 1981 prohibits racial discrimination through state or private action, and requires a showing of intentional discrimination on account of race. *Evans v. McKay,* 869 F.2d 1341, 1344 (9th Cir. 1989). It provides, "[a]ll persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, given evidence, and to the full and equal benefit of all laws and proceedings." With regards to the § 1981 claim, it is unclear how defendants interfered with plaintiff's right to "make and enforce contracts, to sue, be

[a party], give evidence, and to the full and equal benefit of all laws." 42 U.S.C. § 1981. A claim of false arrest cannot typically provide the basis for a § 1981 claim. *See Morgan v. The District of Columbia,* 550 F.Supp. 465, 467 (D.D.C.1982), *affirmed* 725 F.2d 125 (D.C.Cir.1983) (The court was unaware "how plaintiffs' allegedly false arrest can be considered either a racially discriminatory action on a contract or a discriminatory effort to deny plaintiffs their right to sue, be parties, [and] give evidence.").

 The Equal Protection Clause provides, in part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of its laws." U.S. Const. amend. XIV, § 1. The central purpose of this constitutional guarantee is the prevention of official conduct discriminating on the basis of race. *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). A § 1983 plaintiff alleging an equal protection violation must establish that the unlawful discrimination was intentional. *See Monteiro v. Tempe Union High School Dist.,* 158 F.3d 1022, 1025 (1998).

In this case, plaintiff makes three main assertions in support of his claims of discrimination: (1) defendants' response time on September 1, 1998 was unreasonable; (2) Officer McGinn used excessive force; and (3) plaintiff was falsely arrested. As the issue of false arrest has already been discussed, the court will only address plaintiff's first two assertions.

Plaintiff attempts to create an issue of fact as to the time it took defendants to arrive at the scene by alleging that the defendants "falsified evidence" as to what time the 911 calls were made and what time the police actually arrived at the scene. Defendants argue that Officer McGinn arrived five minutes after plaintiff

concluded his call to the police dispatcher and three minutes after the pool hall janitor, Charles Hunter, called the dispatcher. In his deposition, Charles Hunter stated that the police arrived approximately five to eight minutes after he called.

Both parties attempt to support their version of the facts by producing phone records that indicate the time of each call was made. The court is unpersuaded by this evidence because each of the phone records were based on a different clock. The clock recording calls made on plaintiff's cell phone could have been one to two minutes different than the clock used in creating the police dispatch phone records. Further, even if it did take Officer McGinn eight minutes to respond to the call, plaintiff has not proffered any evidence to support his theory that "Officer McGinn was dispatched but waited around the corner ... until after the plaintiff had been attacked and beaten by the investor defendants" or that his actions were racially motivated. Nor has plaintiff proffered any authority suggesting that eight minutes was an "unreasonable response time."

As to the alleged use of excessive force, plaintiff claims that without conducting an investigation, Officer McGinn "pushed his knee against the plaintiff's shoulder even though plaintiff was lying on the ground and in handcuffs." Defendants state, and Charles Hunter's deposition supports, that when McGinn arrived at the scene one of the investor defendants was sitting or lying on top of plaintiff. McGinn got the investor defendant up, separated the investor defendants from plaintiff, "gently tapped" plaintiff of the shoulder and told him to "stay seated."

Defendants point to Eleventh Circuit authority that applies a de minimis standard to police force, and argues that even if McGinn did place his knee on plain-

tiff's shoulder it was a de minimis use of force. Regardless of the legal standard applicable to excessive force, the court finds it more important to note that again, plaintiff has not proffered any facts indicating that McGinn acted with a racial animus. McGinn was not involved in any of the pre-September 1, 1998 alleged harassment, and there is no other evidence indicating any racial motivation on his part. Summary judgment is therefore GRANTED on the §§ 1981 and 1983 discrimination claims.

c) *Conspiracy to Violate Civil Rights (42 U.S.C. §§ 1985 and 1986)*

In his fourteenth cause of action plaintiff asserts that the investor defendants and defendants Police Chief James, Sergeant Sierras, and Officer McGinn conspired to violate his civil rights on September 1, 1998 by entering into an agreement for the purposes of depriving plaintiff of his equal protection rights, and that this agreement was motivated by defendants' discriminatory attitude towards African Americans. In his fifteenth cause of action, plaintiff alleges that the same Emeryville defendants conspired to violate his civil rights on September 1, 1998 by siding with the investor defendants in the dispute between the two parties, and that this decision was also motivated by defendants' discriminatory attitude towards African Americans.

In order to state a claim under § 1985, a plaintiff must show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" lay behind the alleged conspirators' action and that the conspiracy was aimed at interfering with protected rights secured by law to all. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also Bretz v. Kelman*, 773 F.2d 1026, 1027–28 (9th Cir.1985). "The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim

predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175 (9th Cir.1989). Here, not only has plaintiff failed to state a § 1983 deprivation, but he has failed to state any facts indicating a conspiracy existed.

Section 1986 provides a cause of action for damages where a valid claim for relief has been stated under § 1985. Thus, if plaintiff is unable to state a claim for his other causes of action, his §§ 1985 and 1986 claims must fail as well. Summary judgment is therefore GRANTED on the §§ 1985 and 1986 claims.

## II. *Motion for Extension of Time to Complete Discovery*

### A. *Legal Standard*

■ Plaintiff, in his motion for an extension of time to complete discovery, cites to Federal Rule of Civil Procedure 6(b). Rule 6(b) states that "the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Defendants, in their opposition to oppose the motion, cite to Rule 16(b), which states: "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Although not cited by either party, Rule 56(f) permits for an extension of discovery to oppose a summary judgment motion. The rule states: "Should it appear from the affidavits of a party opposing [a motion for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may . . . order a continuance to permit . . . depositions to be taken or discovery to be had." Parties must submit affidavits showing (1) the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that those soughtafter facts are essential to

resist the summary judgment motion. *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998). If the party moving for a Rule 56(f) continuance has had ample opportunity to conduct discovery, and has not diligently done so, the request for further discovery may be denied. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir.1996) (citations omitted).

### B. *Plaintiff's Motion for Extension of Time to Complete Discovery*

■ Plaintiff argues that his lack of counsel caused his discovery delay and that defendants did not cooperate with his attempts to schedule depositions. The original discovery cut-off in this case was December 29, 2000. Due to plaintiff's failure to appear at his own deposition, discovery was extended until February 12, 2001. Plaintiff has had two different attorneys withdraw from representing him in this case. The attorneys, in asking for permission to withdraw, cited to plaintiff's failure to pay his attorneys' fees and cooperate with counsel. Almost two and one half years has passed since this matter was removed to federal court, and the trial date is just two months away. Plaintiff has not, however, informed the court as to who exactly he wants to depose and he has not specifically demonstrated that further discovery would allow him to successfully oppose this motion for summary judgment. In light of plaintiff's lack of diligence in pursuing discovery in the past, his failure to request a modification of the pre-trial schedule, and his failure to demonstrate good cause, plaintiff's request for further discovery is DENIED.

## III. *Motion to Strike Declaration of David Hicks*

### A. *Legal Standard*

■ A declaration filed in support or opposition to a motion for summary judg-

ment must be made by witnesses having personal knowledge of the facts stated therein, state facts that would be admissible evidence, and affirmatively show that the witness would be competent to testify at trial. Fed.R.Civ.P. 56(e). It is not sufficient for the declarant to state that he or she has personal knowledge of the facts stated. Rather, the declarant must state facts showing his or her connection to the matters stated, establishing the source of the information. Fed.R.Evid. 602; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

### B. *Emeryville Defendants' Motion to Strike Declaration of David Hicks*

The Emeryville defendants move to strike the declaration of David Hicks on the grounds that it is lacking foundation, irrelevant, conclusory, improper opinion, speculative, argumentative, and/or hearsay. In his declaration, Hicks states that he was out of the country on September 1, 1998. As the incident that arose on that date is the sole basis for plaintiff's claims, Hick's previous or later observations have no relevance to this matter. In addition, many of Hick's statements are hearsay, lack foundation, and form conclusions as opposed to state facts. The Emeryville defendants' motion to strike Hick's declaration is thus GRANTED.

### IV. *The Remaining Causes of Action*

The court having granted summary judgment on plaintiff's twelfth, thirteenth, fourteenth, and fifteenth causes of action, only four claims remain—the first, second, third, and fifth causes of action—each of which is a state law claim alleged against the investor defendants. The court declines to extend supplemental jurisdiction over these claims and remands this matter to state court. *Binder v. Gillespie,* 184 F.3d 1059, 1066 (9th Cir.1999), *cert. de-*

*nied,* 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000).

### V. *Motion for Leave to Amend Complaint*

On March 27, 2001 plaintiff filed a motion for leave to amend his complaint and noticed it for hearing on May 2, 2001. As the federal claims have been dismissed, this motion for leave to amend is DENIED as moot. The hearing date of May 2, 2001 is VACATED.

### CONCLUSION

For the foregoing reasons, the court hereby GRANTS the Emeryville defendants' motion for summary judgment, DENIES plaintiff's motion to extend discovery, GRANTS the Emeryville defendants' motion to strike the declaration of David Hicks, and DENIES plaintiff's motion for leave to amend the complaint. The remaining four causes of action are remanded to state court. This order fully adjudicates the motions listed at Numbers 116, 119, 138, and 139 of the clerk's docket for this case.

IT IS SO ORDERED.

### JUDGMENT

The court having considered the issues raised in defendants' motion for summary judgment, and having issued an order granting the motion as to the federal claims and remanding the state claims,

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff take nothing, that the action be dismissed on the merits, and that each side bear his or its own costs.

IT IS SO ORDERED.